Julius R. Epstein v. Commissioner.
Epstein v. Commissioner
Docket Nos. 12931, 13587.
United States Tax Court
1950 Tax Ct. Memo LEXIS 257; 9 T.C.M. (CCH) 172; T.C.M. (RIA) 50058; March 8, 1950
*257 Petitioner's wife supplied a substantial part of the consideration paid by petitioner for the transfer to him of all the stock of a corporation; the petitioner, several months thereafter, transferred to his wife one-half of the stock of the corporation; on the same day, the corporation was dissolved, petitioner and his wife each receiving in distribution one-half of its assets; on the day succeeding the dissolution petitioner and his wife entered into a written agreement of partnership each contributing to the capital thereof one-half of the assets of the dissolved corporation and $1,000 in cash. In the operation of the business under the agreement the wife performed vital services and participated in the control and management of the business and its policies; held, that a bona fide partnership, for federal tax purposes, existed between petitioner and his wife during the taxable years. David Beck, Esq., for the petitioner. John E. Mahoney, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: The respondent determined deficiencies against petitioner in the amounts of $16,070.24 for the year 1943 and $3,868.95 for the year *258 1944. The deficiencies are based upon the inclusion in petitioner's income of the total net income of the hereinafter mentioned American Sportswear Company, an alleged partnership, in the respective years. The year 1942 also is involved in computation of the deficiency for 1943 because of the Current Tax Payment Act of 1943. The two proceedings were consolidated. The only issue is whether a valid partnership, for federal tax purposes, existed between petitioner and his wife in the business conducted under the name of American Sportswear Company for the taxable years involved herein. Findings of Fact Petitioner is an individual residing in Newark, New Jersey, and filed his income tax returns for the calendar years 1943 and 1944 with the collector of internal revenue for the fifth district of New Jersey. Petitioner and his wife were married in 1917 and shortly thereafter opened a joint savings account in the Workmen's Building & Loan Association, Newark, New Jersey. The account consisted entirely of the wife's savings of approximately $1,000 and a gift of $150 from her mother to her as dowry. The wife had worked for four years before the marriage in a ladies' undergarment shop *259 examining garments, buttonhole making, and sewing on buttons, and had saved about $5 per week from her wages, accumulating the approximately $1,000 at the time of the marriage. Prior to the marriage petitioner had worked as a raincoat cementer and had no savings or other money to contribute to the joint savings account. The year following their marriage petitioner and his wife entered into an informal partnership with petitioner's father and uncle, doing business under the name of the London Raincoat Company. The father and uncle each contributed $1,000 to this business and petitioner and his wife contributed $500 from their joint account. Both petitioner and his wife worked full time in this business, with the exception, as to the wife, of times of her absence incident to the bearing of children. Her services to the business were of essentially the same nature as in her prior employment, i.e., examining garments, buttonhole making, and sewing on buttons. She would also take care of the office when petitioner was out selling. Until the death of petitioner's father in 1925 petitioner and his wife together drew approximately $25 weekly from the business as their share of the earnings, *260 and subsequently $40 weekly. In 1930 the business no longer afforded sufficient income to support the two families of petitioner and his uncle so petitioner and his wife withdrew, receiving $500 from petitioner's uncle as the capital they had originally invested in the business. This amount was redeposited in the joint account. In the ensuing years through 1939 petitioner worked as a collector for installment houses, netting about $50 per week. His wife supplemented the family income by working on week ends as a cashier in a delicatessen, receiving groceries for her services in lieu of wages. From their earnings they saved $5 monthly, or an approximate total of $550, which was deposited in their joint savings account, making a total amount of $1,700 in that account at the end of 1939. Petitioner and his wife frequently discussed the possibility of his going back into the raincoat business, but the first opportunity came in 1940 when petitioner bought an interest for $2,000 as a partner in the Anchor Sportswear Company of Red Bank, New Jersey. Of this $2,000 approximately $1,200 was obtained from liquidating the joint account in the building and loan association. In liquidating the *261 account only the $1,200 was realized because of the impaired financial condition of the association. The remaining $800 of the $2,000 invested in the Anchor Sportswear Company was borrowed by petitioner's wife from her mother, brother, and sister. She personally repaid it in later years. In the Anchor Sportswear Company partnership she performed no services. Petitioner withdrew from this partnership within less than a year and the investment of $2,000 was returned to him. He then, in April 1941, used $1,800 of the $2,000 to purchase 40 shares (half of the outstanding stock) of American Sportswear Company, a corporation manufacturing raincoats on a contract basis, the stock of which was wholly owned by a Mr. Gilbert. Petitioner had desired to purchase the stock in the name of his wife and himself, but Gilbert would not sell the stock unless it was issued in the name of petitioner alone because he (Gilbert) did not want any woman to have a voice as a stockholder in the affairs of the corporation; and petitioner's wife consented that Gilbert's requirement in this respect be met for the time being. The 40 shares of stock cost $1,366 and petitioner advanced the corporation the balance *262 of the $1,800 (or $434) as working capital. The corporation was not in very good financial condition at this time. During the period when petitioner thus owned a half interest in the corporation his wife worked for the corporation on occasions by examining and performing other services when she was needed, but received no compensation for such services. The business of the corporation, as that of its hereinafter mentioned successor business, was divided into two major departments located in adjoining buildings connected by a passageway, i.e., the sewing department, which employed approximately 35 workers, and the finishing department, which examined and finished the garments and saw that they were in complete condition for shipment and which employed about 22 workers. The business manufactured finished raincoats for customers who supplied the cloth. The only purchases of materials required for the business were small supplies such as thread and buttons. Approximately 40 machines were used in the two departments. In February 1942 petitioner purchased the remaining 40 shares that Gilbert owned of American Sportswear stock. The corporation's financial condition was at this time not *263 much improved and it was indebted to Gilbert for back salary and other personal advances to the extent of $2,000. The corporation raised $1,700 on a chattel mortgage on its assets and petitioner advanced it $300 so that it could pay its obligations to Gilbert, which it did with the $2,000. Petitioner then paid Gilbert $700 as consideration for the remaining 40 shares of stock. The $1,000 which petitioner used in these transactions was obtained by personal loans made petitioner and his wife in equal amounts from a mutual friend of petitioner and his wife and from his wife's brother-in-law. The chattel mortgage was discharged by the corporation in the early part of June 1942. Following the acquisition of the total shares of the corporation by petitioner, his wife continued to render the same services as she had previously done when her husband owned only a half interest, i.e., examining and helping out when needed. She received no compensation for these services, except $300, for the period following the discharge of the mortgage in the latter part of May 1942 to the dissolution of the corporation July 31, 1942. Shortly prior to the discharge of the mortgage petitioner and his wife had *264 several discussions with their attorney, who was also attorney for the corporation, relative to a proposed dissolution of the corporation and the formation of a partnership by petitioner and his wife. The attorney persuaded them to do nothing in that regard until the mortgage was discharged stating to them that otherwise the credit position of the business might be jeopardized. After the mortgage was discharged it was decided, on about June 15, 1942, to proceed with the dissolution of the corporation and the formation of the partnership. Prior to the dissolution of the corporation a resolution was passed on July 31, 1942, voting petitioner back salary of $4,500, of which $2,500 was paid in 100 shares of additional stock of $25 per value issued to him and $2,000 in cash paid him. Petitioner thereupon transferred to his wife $1,000 in cash and half of all the stock he then owned in the American Sportswear Company, a total of 90 shares being so transferred. Petitioner and his wife always considered that they shared equally in the investments in the corporation, and so informed their attorney. The corporation was dissolved on July 31, 1942. On August 1, 1942, a partnership agreement was *265 executed between petitioner and his wife under the terms of which they were to, and did, contribute capital in equal shares, consisting of the assets of the dissolved corporation which had been received in distribution by them plus $1,000 each in cash. The assets of the dissolved corporation contributed were as follows: Cash on Hand on Deposit
$ 490.75
Machinery and Equipment, Furniture
and Fixtures
6,200.56
Prepaid Insurance and Taxes
295.54
Supplies
216.05
Loans Receivable
25.00
Deposits
170.00
Total
$7,397.90
Less the following liabilities of the corporation assumed by the partnership: Accounts Payable
$ 400.00
Notes Payable
200.00
Accrued Taxes
718.15
Accrued Expenses
352.42
Total
$1,670.57
The agreement provided: That the style of the partnership should be American Sportswear Company and that the net profits and losses would be divided equally between the partners; that capital and drawing accounts for each petitioner and his wife be set up; that each partner should be entitled to withdraw funds equally with the other; that checks, notes, and all instruments for the payment of money on account of the partnership could *266 be signed by either petitioner or his wife; that each partner was to have full authority to act for the partnership in all its business; and that each partner should have an equal voice in and control over the capital and management of the business. Books of account as provided in the agreement were set up and maintained by the business and both petitioner and his wife drew monies from their respective drawing accounts. A business name certificate to the effect that Julius R. and Anna Epstein were doing business under the name of American Sportswear Company was filed August 1, 1942. After the formation of the partnership petitioner's wife continued to work in the business. She purchased the buttons and thread. She approved the bills. She signed most of the checks. She supervised the finishing department and she discussed with petitioner the matter of fixing prices and all the general policies of the business before such policies were fixed or such policies were adopted. She never received any salary or compensation other than her share of the profits of the business. The American Sportswear Company filed partnership returns for each of the years 1942, 1943, and 1944, reporting *267 the names of the partners as Julius R. Epstein and Anna Epstein with the shares of each in the income as equal. The partnership of American Sportswear Company was a bona fide partnership and was so intended to be by petitioner and his wife acting with a business purpose when they signed the agreement of August 31, 1942; and petitioner and his wife were partners under that agreement throughout the taxable years. Opinion The question for decision is whether, for federal income tax purposes, petitioner and his wife, by their agreement of August 1, 1942, intended to, and did, join together in a genuine partnership to carry on the business activities of American Sportswear Company and so operated that business during the taxable years. If the result of the agreement is a "mere paper reallocation of income" between petitioner and his wife, we cannot sanction such a frustration of the federal revenue laws however valid the agreement may be under state law for other purposes. . But, if the manifestations of the intent of the parties point to a bona fide intention to carry on the business as partners we may not disregard their true intent. *268 . As was said in that case "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." In a search for the real intent of the parties in the instant case, the following factors may serve as guides, i.e., the contributions of capital to the business of the American Sportswear Company (the alleged partnership) by petitioner's wife, if any; the performance by her of vital services in the business, if any; and her active participation in the control and management of the business, if any. We think that *269 the facts disclose that petitioner's wife made such substantial contribution originating with her to the capital of the business as would furnish the first factor mentioned above. The route through which this contribution found its way into the business is clearly discernible as follows: (a) Of the $2,000 invested by petitioner in the Anchor Sportswear Company in which he, but not she, was a partner petitioner's wife furnished the amount of $800 borrowed by her from her mother, brother, and sister, and the further amount of approximately $811.75 (or 1150/1700 of $1,200) realized from the joint account in the building and loan association; (b) the $2,000 invested in the Anchor Sportswear Company was returned to petitioner upon his withdrawal from that partnership; (c) of this $2,000 so returned ($1,611.75 of which had been furnished by petitioner's wife), $1,800 was used by petitioner in April 1941 to purchase 40 shares (or one-half of its then outstanding stock) of the American Sportswear Company (the corporation) and to contribute to its working capital; (d) the $1,000 which was used in consummating the purchase in February 1942 of the then remaining 40 shares of the American Sportswear *270 Company was obtained by loans by petitioner and his wife jointly from a friend of theirs and the brother-in-law of petitioner's wife; (e) thereafter, on July 31, 1942, and subsequent to the transfer to petitioner of 100 additional shares of stock in the corporation in part payment as back salary to him, he conveyed to his wife one-half (or 90 shares) of all the then outstanding shares of stock of the corporation as well as $1,000 cash of the $2,000 cash which had also been paid him as back salary; and (f) the corporation was dissolved on July 31, 1942, and one-half of its assets distributed in equal parts to petitioner and his wife who, on the next day, entered into the written agreement of partnership, each contributing to the partnership capital one-half of the assets of the dissolved corporation which had been distributed to each and $1,000 of the cash which had been paid petitioner as back salary. As to the contribution of capital to the business by the wife, the facts in the instant case bear marked resemblance to those in where the wives of two husbands had each contributed $1,000, received as a dowry, to an independent business conducted *271 by her husband. After the independent businesses had been operated for some time the two husbands, in about 1911, "began working together" in the same kind of business as each had operated before, one husband contributing a horse and wagon which he had theretofore purchased for use in his independent business with the $1,000 dowry of his wife, and the other husband contributing $1,000. Thereafter (with the exception of about three months when the business was operated as a corporation) and in April 1912 upon dissolution of the corporation, the two husbands jointly operated a business of a similar kind but without any formal agreement and developed it into a large and profitable enterprise. In January 1928 the husbands and their wives entered into a written agreement by which each of the wives was assigned as a partner a one-fourth interest in the business "in consideration of love and affection." On these facts, we found that the wives contributed capital to the business conducted under the 1928 agreement through the initial use of their dowries in the independent businesses of their respective husbands which began operations at least 15 years prior to the 1928 agreement. Cf. also *272 . We also think that the facts show that petitioner's wife performed vital services for the business and actually participated in its control and management in that: She supervised the finishing department; she purchased the buttons and thread which constituted the bulk of the materials necessary for use in the business; she approved the bills; she signed most of the checks and discussed with petitioner the matter of fixing prices and all the general policies of the business before such prices were fixed or such policies adopted. All the above facts and our conclusions thereon with reference to the contributions of petitioner's wife to the capital of the business, her performance of vital services, and her participation in the control and management of the business lead to the conclusion that the agreement of August 1942 was entered into by petitioner and his wife with the intention of both, acting with a business purpose, that the business thereby provided for and thereafter, and during the taxable years, operated thereunder should constitute a bona fide partnership. We hold that it was such a partnership for federal income *273 tax purposes and that respondent erred in taxing more than one-half of the net income of the American Sportswear Company to petitioner. Assuming, but not deciding, that by the equal division with his wife of the 100 shares of stock in the corporation and the $2,000, both received by petitioner as back salary from the corporation, there was a gift from petitioner to his wife of 50 shares of stock and $1,000 cash and that realization therefrom was such as would not, when invested in the capital of the partnership, be recognized for tax purposes, as a contribution of the wife to that capital, we nevertheless think that our conclusion that the wife made such substantial contribution to the capital of the partnership business as would furnish the first factor mentioned above as one of our guides in searching for the intent of the parties is not adversely affected, since the facts show that she made other substantial contributions. Nor would it affect an equal division of profits of the business between petitioner and his wife as provided in their written agreement. See , where the wives contributed capital in equal amounts with their respective *274 husbands through gifts from the husbands, and but little, if any, services, under an agreement that they would share equally, so far as they and their husbands were concerned, in profits and losses. Apparently because the wives contributed little, if any, services we said: "Having concluded that the partnership is valid for tax purposes, we do not concern ourselves with the sufficiency of the wives' contributions of capital or services to justify the shares of partnership earnings distributed to them. Any reallocation of partnership earnings among the partners contrary to that provided for in the partnership agreement would amount to the making of a new contract for the partners. That action is beyond the province of this Court, in the absence of any patently unreasonable agreement by them. ; ." This principle is equally applicable here with reference to petitioner's wife's capital contribution to the partnership even if the above assumptions be made. Moreover, it may be noted that respondent does not suggest that if the partnership is found to be one for federal tax *275 purposes the wife's share in its income is to be less than the one-half provided for in the agreement. Decision will be entered for the petitioner.